RHEA *v.* STATE.

4843                                   291 S. W. 2d 505

Opinion delivered June 18, 1956.

*Kenneth Coffelt,* for appellant.

*Tom Gentry,* Attorney General and *Thorp Thomas,* Asst. Atty. General, for appellee.

GEORGE ROSE SMITH, J. This is a petition filed by Sewell Rhea, a sixteen-year-old boy, for a writ of certiorari to quash a circuit court order by which Sewell was found to be in contempt of court and was sentenced

to serve 100 days in the county jail. The question is whether the petitioner, as a witness in the court below, was entitled to refuse to testify on the ground of self-incrimination. Ark. Const., Art. 2, § 8. Petitioner also relies on the similar clause in the Fifth Amendment to the federal constitution, but that clause does not apply to proceedings in the state courts. *Adamson* v. *California*, 332 U. S. 46, 67 S. Ct. 1672, 91 L. Ed. 1903.

The petitioner's brother, Keith Dale Rhea, was charged with having burglarized a service station owned by Mick Richards. During the trial of that case, which resulted in an acquittal, Sewell Rhea was called as a witness by the prosecuting attorney and was asked this question: "Did you, in the company of your brother, Keith Dale Rhea, break into Mick Richards' service station in May of this year?" The witness refused to answer the question and was thereupon held to be in contempt of court.

Inasmuch as an affirmative answer to the prosecuting attorney's question would undoubtedly have been incriminating, the witness was clearly entitled to remain silent unless there is some circumstance in the case that deprives the petitioner of his constitutional privilege. The State suggests two reasons for withdrawing the protection of the Bill of Rights, but neither suggestion is sound.

First, the State relies upon the provisions of Ark. Stats. 1947, § 43-915, which reads: "In all cases where two or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness in relation to such crime or misdemeanor, but the testimony given by such witness shall in no instance be used against him in any criminal prosecution for the same offense." It is contended that this section confers immunity against subsequent prosecution and effectively destroys any possibility that the witness's forced admissions may ever prove to be incriminating.

It is plain, however, that this statute applies only to proceedings before a grand jury. The statute was

enacted as § 67 of Chapter 45 of the Revised Statutes of 1838. This chapter relates to criminal procedure and, as may be readily seen from the table of contents which follows its title, is subdivided to conform to the various steps involved in a criminal proceeding. Sections 59 through 77 define the procedure to be observed by grand juries. When § 67 is read together with the sections that immediately precede and follow it there can be no doubt that it pertains only to testimony taken in the course of a grand jury investigation. And, with a single exception, the statute has been so applied in the reported cases. *Buzzard* v. *State,* 20 Ark. 106; *Ex parte Butt,* 78 Ark. 262, 93 S. W. 992; *Claborn* v. *State,* 115 Ark. 387, 171 S. W. 862; *Lockett* v. *State,* 145 Ark. 415, 224 S. W. 952.

It is true that in *State* v. *Quarles,* 13 Ark. 307, the statute was inadvertently applied to testimony adduced at a trial before a petit jury. The court's discussion, however, was directed to an entirely different issue, and there is nothing in the opinion to indicate that the court consciously meant to extend the statute beyond the scope clearly intended by the legislature. We do not regard the *Quarles* opinion as a controlling precedent on the issue now presented.

Second, the State contends that Sewell Rhea has already been convicted for the burglary of Richards' filling station and therefore can be compelled to testify about a crime for which he cannot again be put in jeopardy. Wigmore on Evidence (3d Ed.), § 2279. The defect in this argument lies in the State's inability to prove the asserted prior conviction. It would hardly be contended that every witness who claims his constitutional privilege must first prove the negative by demonstrating that he has *not* been convicted. Rather, when the claim of privilege is apparently well founded the burden logically and fairly rests on the State to refute the claim by showing that a prior conviction has robbed the testimony of its incriminating effect.

Here the proof falls a good deal short of establishing a prior conviction. There is admittedly no written

record of such a conviction by any court. The State attempted to prove by the county judge, C. O. Smithers, that Sewell Rhea had been found guilty by the juvenile court and had been sent to the Boys' Industrial School, but Judge Smithers' candid testimony does not satisfy the State's burden of proof. He recalled that Sewell had been brought before the juvenile court by the prosecuting attorney, but he is not certain that charges were preferred in writing. No copy of any such charges was produced by the State. Judge Smithers concluded that Sewell should be in the reform school, but he is unwilling to say that the boy was sent to that institution for the particular offense of breaking into the service station. "It seemed that it was that plus some other things. We didn't think maybe he was telling all the truth about them." There is no written record of the juvenile court decision; Judge Smithers simply turned the boy over to the sheriff with an oral order that he be taken to the Industrial School.

The legislature declared by Act 398 of 1955 that the Boys' Industrial School shall be deemed an accredited educational institution and "is not, and shall not be a part of the penal system of this State, nor shall it be construed as a penal institution." Ark. Stats., § 46-302.1. We need not, and do not, decide whether the sending of a boy to the Industrial School can amount to a conviction within the prohibition against double jeopardy. We merely hold that the State's burden of proving a conviction for the burglary of the service station was not discharged by the inconclusive oral evidence that was produced in the trial court. For all this record shows the petitioner may have been committed not for any specific offense but only because the juvenile court made a general finding of delinquency. Ark. Stats. § 46-302.2. Proof more clear-cut than this is needed to deprive a citizen of the protection afforded by the constitution.

Writ granted.