590

E. G. BALENTINE *v.* STATE of Arkansas

CR 75-220 · 535 S.W. 2d 221

Opinion delivered April 12, 1976

*Herby Branscum Jr.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. E. G. Balentine was convicted of perjury in the first degree (Ark. Stat. Ann. § 41-3001 [Repl. 1964]) at a jury trial and was sentenced to the state penitentiary for a period of five years with four years suspended. On appeal to this court he has designated the points he relies on for reversal as follows:

> "The trial court erred in denying appellant's motion to quash the indictment.
>
> The trial court erred in refusing to allow appellant to introduce the testimony of Steven Taylor before the grand jury.
>
> The trial court erred in denying appellant's motion for a directed verdict.
>
> The trial court erred in allowing the prosecuting attorney to ask appellant irrelevant and immaterial questions about matters simply to inflame the jury.
>
> That the verdict is contrary to the evidence and to the law."

The facts appear as follows: On August 29, 1974, the prosecuting attorney for Stone County filed an information accusing Balentine of delivering a controlled substance, marijuana, in violation of Ark. Stat. Ann. § 82-2517 (a) (1) (ii) (Supp. 1975). A warrant was issued on the information but it was never served on Balentine, and apparently no further action was taken in connection with the information.

In September, 1974, the grand jury was in session in Stone County and, among other matters, it was investigating

the illicit drug and controlled substance traffic in Stone County, and was attempting to determine the source of the contraband.

On September 25, 1974, Balentine and several high school students and young people in the area were subpoenaed as witnesses before the grand jury. Two of the young people testified that they had purchased marijuana from Balentine and Balentine testified in part as follows:

"Q. Well, wherever you lived in August of 1973, I would ask you about a day in August 1973 when Dennis Brandon was there at your house and ask whether or not you sold two ounces of marijuana to Steven Taylor for $12.00?

A. No, sir, I never sold no marijuana to Steven Taylor.

Q. Did you sell two ounces of marijuana to Steven Taylor for any price?

A. No, sir, I didn't.

Q. Did you sell any quantity of marijuana to Steven Taylor on that date?

A. No, sir, I didn't even know Steven Taylor until just back in the summer sometime was the first time I ever met Steven Taylor.

Q. Have you ever sold any marijuana to Steven Taylor?

A. No, sir.

Q. Have you ever sold any to anybody else?

A. No, sir.

Q. Have you ever given any marijuana to anybody?

A. No, sir, I haven't."

On November 18, 1974, the grand jury indicted Balentine for perjury in the first degree, in that on September 25, 1974, he "did corruptly swear, testify or affirm falsely that he had never sold marijuana to anyone and that he had never given marijuana to anyone, and the testimony so testified was material, and against the peace and dignity of the State of Arkansas."

At the trial on June 10, 1975, Orville Johnson, the foreman of the grand jury before whom Balentine and the other witnesses appeared, testified that the grand jury, among other matters, was investigating the source of marijuana and illicit drugs and controlled substances coming into Stone County. He said that Balentine was called as one of approximately 25 witnesses who were questioned. He said that some of the other witnesses indicated that they had obtained marijuana from Balentine, but Balentine testified he had never sold or given away any marijuana. He said that many of the approximately 25 witnesses admitted using marijuana but were very evasive as to where it came from. He said that Balentine's name finally came up as the immediate source from whom some of the witnesses had purchased marijuana. He said that Balentine's denial that he had ever sold or given away marijuana greatly impeded the grand jury's progress in its investigation as to the source of contraband coming into Stone County.

Steven Taylor testified that he was 20 years of age and had smoked marijuana "fairly regularly" since he was about 15 years of age. He testified that he bought two ounces of marijuana from Balentine in August, 1973.

Eddie Jordan testified that he had been smoking marijuana for two or three years and had known the appellant Balentine for about a year. He said he testified before the grand jury and that he purchased some marijuana from Balentine about two months before the grand jury was in session. Both Taylor and Jordan testified in detail as to where and when they purchased marijuana from Balentine and the amount they paid for it.

Balentine testified in his own behalf. He did not state his age but testified that he lived with his wife in a house he built

around 1968 or 1970. He said he had seen Steven Taylor but did not know him in August, 1973. He said he only met Taylor a little more than a year ago and he denied selling any marijuana to Taylor in August, 1973. He denied owning a trailer near the fair grounds where the prosecuting witnesses said they purchased marijuana from him. He said everybody thought the trailer near the fair grounds belonged to him but it actually belonged to his daughter and her husband. He said that he was building a house for his daughter and son-in-law and would occasionally stay in the trailer with them. He also said he had seen Eddie Jordan and had inquired as to who he was, but that he had never sold any marijuana to Jordan.

The appellant, in support of his contention that the trial court erred in denying his motion to quash the indictment, relies on *Claborn* v. *State,* 115 Ark. 387, 171 S.W. 862 (1914), but that case is distinguishable from the case at bar. In *Claborn* v. *State* the appellant who had been indicted by the grand jury for carrying a concealed weapon was called to testify before the grand jury which was investigating the charge against him and for which he had been indicted. As a result of the appellant testifying that he had not carried a concealed weapon, he was indicted, tried and convicted of perjury. On appeal Claborn contended that the indictment should have been quashed because the allegedly perjurious testimony resulted from a violation of his constitutional right against self-incrimination. This court agreed with that contention and in reversing the perjury conviction said:

"An indictment for perjury based upon alleged false swearing in a criminal proceeding pending before the grand jury against the person himself giving the alleged false testimony, is fatally defective unless it alleges that the accused voluntarily appeared before the grand jury to give the testimony upon which the indictment for perjury is predicated."

The indictment in the case at bar does not show that appellant was called to testify as a witness on a charge then pending against him before the grand jury. See *Warren* v. *State,* 153 Ark. 497, 241 S.W. 15 (1922); *State* v. *Roberts,* 148

Ark. 328, 230 S.W. 15 (1921). The record does not show why Balentine was indicted for perjury rather than for selling marijuana; but, be that as it may, Ark. Stat. Ann. § 28-532 (Supp. 1975) provided for Balentine, immunity from prosecution based on his testimony before the grand jury. Therefore, the reasoning of the court in *State* v. *Roberts, supra,* is applicable to the case at bar. In the *Roberts* case we said:

> "The question propounded might or might not have elicited information incriminating the defendant himself. But he could not refuse to answer on that ground, for the reason that the statute protects him from the use of his own testimony in the prosecution of a charge against himself. Crawford & Moses' Digest, § 3122; *State* v. *Bach Liquor Co.,* 67 Ark. 163; *Ex parte Butt,* 78 Ark. 262."

The appellant's contention that the trial court erred in failing to admit into evidence a transcript of Steven Taylor's testimony before the grand jury is without merit. The court sustained an objection to the admission of this transcript because it was not material to the perjury charge against the appellant. The transcript was available to the appellant on cross-examination of the witness and, furthermore, the appellant made no offer of proof.

The appellant's contention that the trial court erred in denying his motion for a directed verdict is likewise without merit. In *Munn* v. *State,* 257 Ark. 1057, 521 S.W. 2d 535 (1975), quoting from *Burks* v. *State,* 255 Ark. 23, 498 S.W. 2d 336 (1973), we said:

> " ' . . . a directed verdict is proper only when no fact issue exists and on appeal we review the evidence in the light most favorable to the appellee and affirm if there is any substantial evidence.' "

The basis for the appellant's motion for directed verdict in the case at bar was that the state failed to prove the materiality of the appellant's testimony before the grand jury. In *Smith* v. *State,* 153 Ark. 645, 241 S.W. 37 (1922), this court was considering perjury resulting from testimony before a grand jury and in that case we said:

"In the case of *Smith* v. *State,* 91 Ark. 200, a syllabus reads as follows: 'In an investigation before a grand jury any testimony is material whose necessary effect is to suspend, if not prevent, further investigation of a subject of inquiry, as where defendant's false testimony prevented the grand jury from investigating whether liquors in a given instance had been sold illegally.' "

The grand jury foreman, Orville Johnson, testified that the false testimony of the appellant delayed the grand jury in finding the source of the marijuana being distributed in Stone County. Thus a fact issue existed for the jury.

The appellant's contention that the trial court erred in allowing the prosecuting attorney to ask appellant irrelevant and immaterial questions about matters simply to inflame the jury is also without merit. When a defendant testifies in his own defense, he may be asked, in good faith, about other crimes he may have committed for the purpose of testing his credibility, but he cannot be asked if he has been charged, indicted or accused of other crimes. *Tarkington* v. *State,* 250 Ark. 972, 469 S.W. 2d 93 (1971); see also *Moore* v. *State,* 256 Ark. 385, 507 S.W. 2d 711 (1974).

There is no merit in the appellant's contention that the verdict was contrary to the evidence and to the law.

The judgment is affirmed.